IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:25-CR-563-FL

| | | |
|---|---|---|
| DENNIS WALSTON,<br><br>Plaintiff,<br><br>v.<br><br>FRANK BISIGNANO,<br>Commissioner of Social Security,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | **MEMORANDUM AND RECOMMENDATION** |

Plaintiff Dennis Walston ("Plaintiff" or, in context, "Claimant") filed this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the denial of his application for a period of disability, disability insurance benefits ("DIB"), and supplemental security income ("SSI"). This matter is before the court on Plaintiff's brief [DE-13] ("Pl.'s brief") seeking judgment in his favor, Defendant's responsive brief [DE-15] ("Def.'s Brief") in opposition, and Plaintiff's reply brief [DE-16] ("Pl.'s Reply"). The parties have fully briefed this matter pursuant to the Supplemental Rules for Social Security Actions under 42 U.S.C. § 405(g), and this case is ripe for adjudication. The briefs were referred to the undersigned magistrate judge for a memorandum and recommendation pursuant to 28 U.S.C. § 636(b)(1). Having reviewed and considered the record, the administrative transcript, the briefs submitted by the parties, and the applicable law, it is recommended that Plaintiff's brief [DE-13] be allowed, Defendant's brief [DE-15] be denied, and the case be remanded to the Commissioner for further proceedings consistent with the Memorandum and Recommendation.

## I. STATEMENT OF THE CASE

Plaintiff protectively filed applications for a period of disability, DIB, and SSI on February

6, 2023, alleging disability beginning September 10, 2021. Transcript of Proceedings ("Tr.") 75, 240-53. His claim was denied initially. Tr. 68-83, 137-42. Plaintiff filed a request for reconsideration (Tr. 143-44), and was denied upon reconsideration on April 19, 2024 (Tr. 84-99, 145-52). On April 29, 2024, Plaintiff requested a hearing before the Administrative Law Judge ("ALJ"). Tr. 153. A hearing before the ALJ was held on October 3, 2024, at which Plaintiff, represented by counsel, and a vocational expert ("VE") appeared and testified. Tr. 23-53. On October 15, 2024, the ALJ issued a decision denying Plaintiff's request for benefits. Tr. 100-119.

On November 4, 2024, Plaintiff requested a review of the ALJ's decision by the Appeals Council. Tr. 221-23. On July 7, 2025, the Appeals Council denied Plaintiff's request for review. Tr. 5-11. Plaintiff then filed a complaint in this court seeking review of the now-final administrative decision.

## II. STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla . . . and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting

evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996), *superseded by regulation on other grounds*, 20 C.F.R. § 416.927(d)(2)). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained his or her findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997). "Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the administrator." *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983).

## III. DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth in 20 C.F.R. §§ 404.1520 and 416.920 under which the ALJ is to evaluate a claim:

> The claimant (1) must not be engaged in "substantial gainful activity ["SGA"]," i.e., currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity ["RFC"] to (4) perform . . . past work or (5) any other work.

*Albright v. Comm'r of the Soc. Sec. Admin.*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995) (citation omitted). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.*

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. §§ 404.1520a(b)-(c) and §§ 416.920a(b)-(c). This

regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. *Id.* §§ 404.1520a(c)(3), 416.920a(c)(3). The ALJ is required to incorporate into his written decision pertinent findings and conclusions based on the "special technique." *Id.* §§ 404.1520a(e)(4), 416.920a(e)(4).

## IV. ALJ'S FINDINGS

Applying the above-described sequential evaluation process, the ALJ found Plaintiff "not disabled" as defined in the Act. Tr. 113-14. At step one, the ALJ determined Plaintiff had not engaged in substantial gainful employment since September 10, 2021, the alleged onset date. Tr. 105.

Next, at step two, the ALJ determined Plaintiff had the following severe impairments: cerebral palsy; residuals of cerebrovascular accident; and primary osteoarthritis of his knees and ankles. Tr. 105. At step three, however, the ALJ concluded these impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 105-06.

Prior to proceeding to step four, the ALJ assessed Plaintiff's RFC, finding Plaintiff had the ability to perform light work[1] with the following limitations:

[1] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If an individual can perform light work, he or she can also perform sedentary work, unless there are additional limiting factors such as the loss of fine dexterity or the inability to sit for long periods of time." 20 C.F.R. §§ 404.1567(b), 416.967(b).

"Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and

> sitting 6 hours in an 8-hour workday; standing and/or walking 4 hours in an 8-hour workday; lifting or carrying up to 10 pounds frequently and 20 pounds occasionally; frequently handling and fingering with his non-dominant left upper extremity; frequently pushing or pull with his right lower extremity; occasionally pushing or pulling with his left lower extremity; occasionally balancing, stooping, kneeling, crouching, crawling, and climbing ramps or stairs; no climbing ladders, ropes, or scaffolds; and avoidance of concentrated exposure to pulmonary irritants such as fumes, odors, dusts, gases, and poor ventilation, and hazards such as unprotected heights and dangerous machinery. He medically requires a hand-held assistive device with ambulation.

Tr. 106-7.

In making this assessment, the ALJ found Plaintiff's statements about his limitations not entirely consistent with the medical evidence and other evidence in the record. Tr. 112.

At step four, the ALJ concluded Plaintiff did not have the RFC to perform the requirements of his past relevant work as a packing house supervisor, as actually or generally performed. Tr. 112. Nonetheless, at step five, upon considering Plaintiff's age, education, work experience, and RFC, the ALJ determined Plaintiff is capable of making an adjustment to other work that exists in significant numbers in the national economy. Tr. 112-13.

## V. OVERVIEW OF PLAINTIFF'S CONTENTIONS

In this case, Plaintiff alleges the ALJ erred by: (1) "failing to evaluate the medical opinion evidence in accordance with 20 C.F.R. §§ 404.1520c, 416.920c"; and (2) "fail[ing] to build an accurate and logical bridge between the evidence and the RFC assessment." Pl.'s Brief [DE-13 at 2.[2] Each will be discussed below.

---

standing are required occasionally and other sedentary criteria are met." 20 C.F.R. §§ 404.1567(a), 416.967(a); S.S.R. 96-9p, 1996 WL 374185, at *3 (July 2, 1996). "Occasionally" generally totals no more than about 2 hours of an 8-hour workday. S.S.R. 96-9p, 1996 WL 374185, at *3. "Sitting" generally totals about 6 hours of an 8-hour workday. *Id.* A full range of sedentary work includes all or substantially all of the approximately 200 unskilled sedentary occupations administratively noticed in 20 C.F.R. Part 404, Subpart P, Appendix 2, Table 1. *Id.*

[2] Except for citations to the Transcript of Proceedings ("Tr."), all citations to documents using the docket entry number [DE-] provided in the court's docket will specify the page number automatically assigned by the CM/ECF system, rather than the page number, if any, specified in the original document.

## VI. DISCUSSION

### A. Evaluation of Medical Opinion Evidence

Plaintiff alleges the ALJ failed "to evaluate the medical opinion evidence." Pl.'s Brief [DE-13 at 2. Specifically, Plaintiff alleges that the ALJ failed to discuss the consistency of medical opinion of Elliotte Pearson, N.P. ("Nurse Pearson"), as required by 20 C.F.R. §§ 404.1520c, 416.920c. Pl.'s Brief [DE-13] at 11. In the written decision, the ALJ specifically addresses Nurse Pearson's February 23, 2023 opinion as follows:

> In making these findings, the [ALJ] agrees generally with the February 2023 opinion of [Nurse] Pearson that the claimant is limited to lifting 15-20 pounds occasionally and 5-10 pounds frequently. However, his opinions that, in an 8-hour workday, the claimant can only sit for 3-4 hours, stand, or walk for 2-3 hours, and sustain work activities for 2-3 hours, are not persuasive because they are not supported by any cited objective findings. His opinions that the claimant is "very limited" in pushing and pulling with his legs; has "some limitations" in pushing and pulling with his bilateral upper extremities; is "limited" in reaching with either arm; and has "limitations" for stooping, crouching, and climbing, are not persuasive because they are not specific as to the degrees of those assessed limitations (Exhibit 6F).

Tr. 110.

The Commissioner contends that "the ALJ expressly considered the consistency of the opinion with Plaintiff's course of treatment overall, satisfying her obligation to evaluate whether the opinion was consistent with the record (and finding, indeed, that it was not[)] (Tr. 107-12)." Def .'s Brief [DE-15] at 14. The Commissioner argues that Fourth Circuit caselaw "directs that the [c]ourt will review the ALJ's discussion as a whole[,]" and to require the ALJ "to repeat her discussion of the evidence when she explained why she was not persuaded by NP Pearson's opinion" is contrary to the same. *Id.*

The applicable regulation regarding the evaluation of medical source opinions in Plaintiff's case are 20 C.F.R. §§ 404.1520c and 416.920c, each titled "*How we consider and articulate*

*medical opinions and prior administrative medical findings for claims filed on or after March 27, 2017*." Under 20 C.F.R. §§ 404.1520c and 416.920c, the SSA "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, the regulations provide five factors for evaluating the persuasiveness of medical opinions and prior administrative medical findings, the five factors being: "(1) Supportability . . . (2) Consistency . . . (3) Relationship with the claimant . . . (4) Specialization . . . [and] (5) Other factors . . . that tend to support or contradict a medical opinion or prior administrative finding. *Id.* §§ 404.1520c(c)(1)-(5), 416.920c(c)(1)-(5). The regulations specify that supportability and consistency are the most important factors in the evaluation. *Id.* §§ 404.1520c(a), 416.920c(a).

"Supportability is the degree to which a provider supports their opinion with relevant, objective medical evidence and explanation, and consistency is the degree to which a provider's opinion is consistent with the evidence of other medical and non-medical sources in the record." *Oakes v. Kijakazi*, 70 F.4th 207, 212 (4th Cir. 2023); *Drumgold v. Comm'r of Soc. Sec.*, 144 F.4th 596, 606 (4th Cir. 2025) ("Supportability roughly means the amount of objective medical evidence supporting the medical opinion, and consistency roughly means how well the medical opinion lines up with other material in the record."). Regarding consistency, the regulations describe that "[t]he more consistent a medical opinion . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion . . . will be." 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).

The regulations also require that an ALJ "articulate how [they] considered the medical opinions and prior administrative medical findings in [the] case record." 20 C.F.R. §§

404.1520c(a), 416.920c(a). In particular, the ALJ must explain how the factors of supportability and consistency were considered for a medical source's medical opinions. *Id.* §§ 404.1520c(b)(2), 416.920c(b)(2). The ALJ may, but is not required to, explain the remaining factors. *Id.* Additionally, among the articulation requirements is the requirement that the ALJ engage in a source-level articulation. *Id.* §§ 404.1520c(b)(1), 416.920c(b)(1). While the ALJ does not need to articulate how they considered the §§ 404.1520c(c) and 416.920c(c) factors for each individual medical opinion, the ALJ must articulate how they considered the factors for each medical source that has provided a medical opinion(s) or prior administrative medical finding(s). *Id.*

Here, the ALJ stated that she generally agreed with Nurse Pearson's February 2023 opinion that Plaintiff was "limited to lifting 15-20 pounds occasionally and 5-10 pounds frequently." Tr. 110. Yet the ALJ continued that Nurse Pearson's "opinions that, in an 8-hour workday, [Plaintiff] can only sit for 3-4 hours, stand, or walk for 2-3 hours, and sustain work activities for 2-3 hours, are not persuasive because they are not supported by any cited objective findings." Tr. 110. The ALJ also considered Nurse Pearson's opinions that Plaintiff "is very limited in pushing and pulling with his legs; has some limitations in pushing and pulling with his bilateral upper extremities; is limited in reaching with either arm; and has limitations for stooping, crouching, and climbing," to be unpersuasive "because they are not specific as to the degrees of those assessed limitations." Tr. 110.

The undersigned agrees with Plaintiff that the ALJ's consideration of Nurse Pearson's opinion is devoid of any articulation of the consistency of this opinion "with the evidence of other medical and non-medical sources in the record." *Oakes*, 70 F.4th at 212. The undersigned recognizes that the ALJ is not required to "explicitly use the terms supportability and consistency." *Greear v. Kijakazi*, No. 2:21CV00017, 2022 U.S. Dist. LEXIS 166800, at *9 (W.D. Va. Sep. 15,

2022) (citations omitted); *Todd A. v. Kijakazi*, No. 3:20cv594 (DJN), 2021 U.S. Dist. LEXIS 221864, at *13 (E.D. Va. Nov. 16, 2021) ("[T]he ALJ need not necessarily use the words 'supportability' or 'consistency,' as long as the ALJ still performs the requisite analysis of these factors."). Yet here, there is no indication, through citations or otherwise, that the ALJ considered the consistency or lack of consistency of Nurse Pearson's opinion with the other evidence in the record at all.

The Commissioner contends that "[r]ead as a whole, the ALJ's decision in this case provides the requisite reasonable articulation to support her evaluation of NP Pearson's opinion." Def.'s Brief [DE-15] at 15. In support of this argument the Commissioner cites various excerpts from the ALJ's decision that appear to potentially be inconsistent with Nurse Pearson's opinion. *Id.* at 14. The requirement to explain the consistency of medical opinions under §§ 404.1520c and 416.920c would become meaningless if it were satisfied on every occasion by the ALJ simply referencing contradictory medical evidence elsewhere in the decision without explanation. While the remainder of the ALJ's discussion of medical and other evidence in her decision might provide relevant context for a consistency articulation under §§ 404.1520c and 416.920c, allowing it to be fairly brief – here, the undersigned finds that the ALJ has failed to demonstrate that she considered the consistency of Nurse Pearson's opinion with the medical and other evidence in this case in a manner that would allow meaningful review.

In sum, the ALJ's lack of explanation frustrates meaningful review by the court, and it is therefore RECOMMENDED that the court remand this matter. On remand, the Commissioner should include a narrative discussion regarding the consistency of Nurse Pearson's opinion with "other medical and non-medical sources in the record." *Oakes*, 70 F.4th at 212. It is, of course, up to the Commissioner to determine what weight to give all evidence. It will be incumbent on

the ALJ to consider all of the evidence before her, and to explain the findings accordingly, so as to permit meaningful review by the court if necessary.

**B. RFC Assessment**

Plaintiff alleges the ALJ "failed to build an accurate and logical bridge between the evidence and the RFC assessment." Pl.'s Brief [DE-13] at 2. Specifically, Plaintiff alleges that there is inconsistency between the ALJ's finding that Plaintiff "requires a handheld assistive device with ambulation and balancing" (*id.* at 15 (quoting Tr. 110)) and the RFC, which specifies that Plaintiff would only require a handheld assistive device with ambulation (*id.* (citing Tr. 107)).

The Commissioner maintains that "the ALJ's analysis built an accurate and logical bridge from the evidence to her conclusion regarding Plaintiff's functional limitations sufficient to enable meaningful judicial review." Def.'s Brief [DE-15] at 19. Additionally, the Commissioner argues that "any discrepancy is harmless as the jobs identified by the vocational expert and relied on by the ALJ do not require balancing." *Id.* at 18. Yet Plaintiff argues that this inconsistency is not harmless error, because "[b]oth occupations the ALJ found available at step five require frequent, from one-third up to two-third of the workday, reaching and handling." Pl.'s Brief [DE-13] at 16. Plaintiff reasons that "[i]f a handheld assistive device is required to be used at all times for standing and walking,[3] one arm is unavailable to perform the required tasks of reaching and handling during those times." *Id.*

The Dictionary of Occupational Titles ("DOT") and the Selected Characteristics of Occupations ("SCO"), a companion title to the DOT describes "standing" as body position that is relevant to physical demands of a job while "[b]alancing" is a physical demand component with

[3] The court notes that the ALJ specifically found that Plaintiff "requires a handheld assistive device with *ambulation and balancing*." Tr. 110 (emphasis added).

its own definition. *See* U.S. Dep't of Labor, Employment & Training Admin., Selected Characteristics of Occupations Defined in the Revised DOT Appendix C ("SCODIDOT App'x C"): Absence or Presence of Other Physical Demand Components (1993) (defining "balancing" as "[m]aintaining body equilibrium to prevent falling when walking, standing, crouching, or running on narrow, slippery, or erratically moving surfaces; or maintaining body equilibrium when performing gymnastic feats."). The representative occupations of information clerk (DOT No. 237.367-018) and blood donor unit assistant (DOT No. 245.367-014) provided by the VE do not include any balancing requirements. *See* SCODIDOT App'x C.

In light of the court's recommendation to remand this case on the issue regarding the evaluation of the medical opinion of Nurse Pearson, the court does not address this argument by Plaintiff (Pl.'s Brief [DE-13] at 14-17). On remand, however, the Commissioner should consider Plaintiff's remaining argument and ensure that any inconsistency is addressed, that the issue is evaluated in accordance with the relevant regulations, rulings, and law, and that any decision is sufficiently explained, so as to permit meaningful judicial review, if necessary.

## VII. CONCLUSION

For the reasons stated above, IT IS RECOMMENDED that Plaintiff's brief [DE-13] be ALLOWED, Defendant's brief [DE-15] be DENIED, and the case be REMANDED to the Commissioner for further proceedings consistent with the Memorandum and Recommendation.

IT IS DIRECTED that a copy of this Memorandum and Recommendation be served on each of the parties or, if represented, their counsel. Each party shall have until **September 11, 2026**, to file written objections to this Memorandum and Recommendation. The presiding district judge must conduct her own review (that is, make a de novo determination) of those portions of the Memorandum and Recommendation to which objection is properly made and may accept,

reject, or modify the determinations in the Memorandum and Recommendation; receive further evidence; or return the matter to the magistrate judge with instructions. *See, e.g.*, 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b), E.D.N.C. Any response to objections shall be filed by the **earlier of 7 days from the filing of the objections or September 18, 2026.**

**If a party does not file written objections to the Memorandum and Recommendation by the foregoing deadline, the party will be giving up the right to review of the Memorandum and Recommendation by the presiding district judge as described above, and the presiding district judge may enter an order or judgment based on the Memorandum and Recommendation without such review. In addition, the party's failure to file written objections by the foregoing deadline will bar the party from appealing to the Court of Appeals from an order or judgment of the presiding district judge based on the Memorandum and Recommendation. *See Wright v. Collins*, 766 F.2d 841, 846-47 (4th Cir. 1985).**

Submitted, this 5th day of September, 2026.

Brian S. Meyers
United States Magistrate Judge